Cara Leslie **ALEXANDER,**
et al., **Plaintiffs,**

v.

**FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.**

**Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.**

United States District Court,
District of Columbia.

March 31, 1999.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, DC, Robert Muze, Stein, Mitchell & Mezines, Washington, DC, for defendant Anthony Marceca.

Ann Weismann, Patricia Russotto, Benjamin Lawsky, U.S. Department of Justice, Civil Division, Washington, DC, for U.S. Department of Defense.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Plaintiffs' Motion [362] to Compel Further Production of Documents from the U.S. Department of Defense and for Sanctions and Department of Defense's Motion [N/D] to File Supplemental Declaration of Eleanor Hill *Ex Parte* and Under Seal. Upon consideration of these motions, oppositions, and replies thereto, and after an *in camera* review of all documents for which the Department of Defense claims a privilege, the court will GRANT IN PART AND DENY IN PART plaintiffs' motion [362] to compel and GRANT Department of Defense's Motion [N/D] to File Supplemental Declaration of Eleanor Hill *Ex Parte* and Under Seal, as discussed and ordered below.

### I. *Background*

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations.

The court has already held that the circumstances surrounding the release of Linda Tripp's background security information from the Department of Defense is discoverable to the extent the method of inquiry is reasonably calculated to lead to the discovery of a White House connection to the release of Tripp's private government information. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 6–7 (D.D.C. Apr. 13,

1998). This line of discovery is appropriate because plaintiffs may seek to create the inference that if the White House misused government information for political purposes in the case of the Tripp release, such evidence may be circumstantial evidence of the similar conduct alleged in plaintiffs' complaint.

In pursuing this line of discovery, plaintiffs served Clifford Bernath, former Principal Deputy Assistant Secretary of Defense for Public Affairs, Department of Defense, with subpoenas ad testificandum and duces tecum. Bernath was the person from the Department of Defense that conveyed to a reporter that Tripp had not disclosed a prior arrest on her background security application. Bernath was directed to release this information by Kenneth Bacon, Assistant Secretary, Department of Defense. Plaintiffs sought to compel Bernath to re-search his documents pursuant to plaintiffs' subpoena duces tecum because Bernath had taken an unreasonably narrow view of what constituted responsiveness to the subpoena. In deciding plaintiffs' motion in that regard as to Bernath, the court noted that Bernath had testified in his deposition: "Every document that I had pertaining to ... Linda Tripp, every document that I had I turned over to the general counsel." Bernath Depo. at 110. Based on this testimony, the court held that "[p]laintiffs may seek to compel the production of responsive, nonprivileged documents that [the Department of Defense] possesses by separate motion. However, at this time, the issue of whether [the Department of Defense] should be compelled to produce additional documents is not properly before the court." *Alexander v. FBI*, Civ. No. 96–2123, Memorandum Opinion at 37, 186 F.R.D. 78, at 96 (D.D.C. July 10, 1998). The plaintiffs now have subpoenaed the documents from the Department of Defense, and the Department has produced what it believes are the responsive, nonprivileged documents to the plaintiffs. The motion to compel now before

the court involves whether the Department of Defense conducted a proper search, whether the Department should be required to submit all withheld documents for *in camera* inspection, and whether it should be compelled to produce the purportedly privileged documents.

## II. *Analysis*

### A. *Re-examination of Documents*

Plaintiffs ask this court to compel the Department of Defense to re-examine and re-search its documents for material responsive to plaintiffs' subpoena duces tecum. Plaintiffs contend that such measures are necessary because the Department of Defense took what this court has described as an unduly narrow view of relevance when the Department undertook its original search.[1] *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum Opinion at 36–37, 186 F.R.D. at 95–96 (D.D.C. July 10, 1998). Plaintiffs maintain that because Bernath undertook an unreasonable search as to his subpoena, then the Department must have undertaken the same search in terms of its subpoena as well.

The court will deny plaintiffs' request to compel the Department of Defense to re-search and reexamine its documents for material responsive to plaintiffs' subpoena. In its brief, counsel for the Department of Defense states that, after the court corrected Bernath's misinterpretation of the scope of discovery in this case, the Department "reexamined documents which could be construed as relating to the Tripp release that have not yet been produced." Department of Defense's Opp. at 9. Based on this representation, the court will deny plaintiffs' request as moot. The court will, however, order counsel for Department of Defense to file a declaration confirming the representations made in their brief. If the Department of Defense has already re-searched its documents, the court will not order them to do it again a third time.

---

1. As already discussed, plaintiffs had subpoenaed similar documents from Bernath, in conjunction with his deposition. Plaintiffs sought to compel further document production based on the claim that Bernath had taken an unduly narrow view of relevance when responding to the subpoena.

The court agreed and compelled Bernath to re-examine and re-search the documents responsive to plaintiffs' subpoena. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum Opinion at 36–37, 186 F.R.D. at 95–96 (D.D.C. July 10, 1998).

B. *Submission of Documents In Camera*

Plaintiffs ask the court to compel the Department of Defense to submit two sets of documents to the court for its *in camera* inspection. First, plaintiffs want the Department to produce all relevant, privileged documents stemming from a re-search and reexamination of documents to the court *in camera* for a determination of the applicability of the claimed privileges. This request will be denied because the court has denied plaintiffs' request to compel such a reexamination.

Second, plaintiffs seek to compel the Department to produce *in camera* all responsive documents for which they claim a privilege, regardless of any re-search or reexamination that might be ordered. The court will also deny this request as moot. In response to plaintiffs' motion to compel, the Department filed *in camera* all of the documents that it claims are responsive but privileged, except for the Inspector General's and Office of General Counsel's investigatory files pertaining to the release of Tripp's background security clearance information. The court subsequently ordered the Department to produce these withheld documents to the court forthwith. The Department soon thereafter made these documents available for the court's *in camera* inspection, and the court examined these documents at the location at which the documents were held. Thus, all of the responsive documents that the Department claims to be privileged have been reviewed by the court in its *in camera* inspection. For this reason, the court will deny plaintiffs' request to compel these submissions *in camera* as moot.

C. *Compelling Further Document Production*

█ Plaintiffs seek to compel the production to plaintiffs of all documents withheld by the Department of Defense under claims of privilege. For the purposes of determining relevance, the Department categorizes the withheld documents in two ways: (1) Documents related to the Department of Defense's investigation concerning Tripp's security clearance, along with underlying documents regarding Tripp's application for a security clearance; and (2) "Other information regarding Ms. Tripp," which includes documents related to Tripp's personnel file and job responsibilities.

1. *Relevance*

Plaintiffs move under Rule 37 to compel the Department of Defense to produce all withheld documents. As this court has held before, the proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant. This is because Rule 26(b)(1) of the Federal Rules of Civil Procedure, which governs the scope of discoverable matter under Rule 37, states, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1).

The Department of Defense claims that plaintiffs seek to compel several sets of undiscoverable matter. First, the Department objects to plaintiffs' pursuit of documents pertaining to Tripp's security clearance, including (a) Congressional inquiries regarding the release of Tripp's background security information; (b) the Department of Defense's Inspector General's and the Department of Defense's General Counsel's investigatory files; and (c) materials pertaining to Tripp's application for her security clearance. Second, the Department objects on relevancy grounds as to plaintiffs' request to compel the Department to produce "[o]ther information regarding Ms. Tripp," which includes documents related to Tripp's personnel file and job responsibilities.

The court ruled on April 13, 1998 that information surrounding the release of Tripp's background security information is discoverable in this case to the extent that the inquiries are reasonably calculated to lead to the discovery of a White House connection to the release. This point is the primary nexus between the Tripp matter and the plaintiffs' allegations in the pending case.

The court today held in a separate opinion that the circumstances pertaining to any Department of Defense decision to implicate Bernath, a career government employee, rather than Bacon, a political appointee, in the release for political purposes of Tripp's background security information is discoverable. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order (D.D.C. March 31, 1999). Specifically, the court reasoned that if evidence of a politically based White House connection to the release of Tripp's security information is discoverable, then information tending to show a concealment of political motivation for or connections to that same information-release must also be discoverable.

In light of these two guiding principles, the court finds that plaintiffs' inquiries seek discoverable documents to the extent that they are reasonably calculated to lead to the discovery of matter pertaining to a White House connection to the release of Tripp's background security information or a political cover-up of political motivations for or connections to such a release. Based on this finding, the court holds that documents within the Department of Defense's possession, custody, or control that relate to Congressional inquiries of the Tripp release [2] and the Department's investigatory files, including the files of the Inspector General and General Counsel, are discoverable, subject to potential claims of privilege.

■ The documents characterized as "other" documents, such as Tripp's personnel files, flexipace arrangements, and recertification of her security clearance, are not discoverable. These documents simply have no reasonable likelihood of revealing any sort of evidence that would be admissible at trial.

### 2. *Privilege Claims*

A determination of whether these relevant documents are privileged is an entirely separate inquiry. The Department of Defense claims three different privileges-attorney-client, deliberative process, and law enforcement-over these documents. The court will address each of these privilege claims in turn.

#### (i) *attorney-client privilege*

The Department of Defense claims attorney-client privilege over four categories of documents. First, the Department seeks to prevent being compelled to turn over what it characterizes as "pages from Clifford Bernath's electronic date book [that] reflect instances in which Mr. Bernath sought the advice of [the Department of Defense's] Office of the General Counsel." Department of Defense's Opposition at 38–39.[3] Second, the Department seeks to withhold "one passage from the date book of James W. Graybeal, Military Assistant to the Assistant Secretary of Defense for Public Affairs," which describes a conversation Bernath had with one of the Department of Defense's attorneys.[4] Third, the Department claims the attorney-client privilege over "a draft public affairs statement about the Tripp disclosure" which "was sent to [a Department of Defense attorney] by Mr. Bernath for review and comment." *Id.* at 41.[5] Fourth, the Department seeks to protect a document prepared by a Department of Defense attorney that reflects "his analysis of applicable law regarding the Tripp disclosure." *Id.* at 42.[6]

■ The Court of Appeals for the District of Columbia has stated that the attorney-client privilege applies only when several elements are shown by the proponent of the privilege:

---

**2.** The Department of Defense has already produced these documents to the extent they fall outside of its claim of the deliberative process privilege. *See* Department of Defense's Opposition at 10.

**3.** These documents are found at pages 3–26 of the Department's *in camera* submission.

**4.** This document is found in the Department of Defense's Notice of Additional Document Subject to Plaintiffs' Motion to Compel Further Production of Documents From the U.S. Department of Defense, filed November 4, 1998.

**5.** This document is found at page 37 of the Department's *in camera* submission.

**6.** This document is found at pages 106–109 of the Department's *in camera* submission.

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir.1984). In the context of a governmental attorney-client privilege, "the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. IRS,* 117 F.3d 607, 618 (D.C.Cir.1997).

 First, the court holds that all of the information contained in the pages from Bernath's date book falls under the protection of the attorney-client privilege. The issue of whether a client's entries in his own diary, which reflect conversations between the client and the attorney, are protected by the attorney-client privilege is not as straightforward as the parties would have it seem. The caselaw on this narrow issue indicates, however, that "[t]he attorney-client privilege applies to entries in a client's diaries that describe communications from attorneys or are based on such communications." 24 WRIGHT & GRAHAM, *supra,* § 5491, at 102 (Supp.1998). This principle has been followed by each court to have addressed this matter. *See Moore v. Tri–City Hospital Auth.,* 118 F.R.D. 646, 650 (D.Ga.1988) (addressing entries in a client's diaries which either "describe communications from attorneys who have represented" the client or "are based on communications from" the client's attorney); *In re Dayco Corp. Derivative Securities Litig.,* 102 F.R.D. 468, 469–70 (holding that a client's diary entries were protected by the attorney-client privilege when the diary has not been voluntarily released); *Solomon v. Scientific American, Inc.,* 125 F.R.D. 34, 36–37 (S.D.N.Y.1988) (holding that the attorney-client privilege applied to a memorandum

drafted by the client). Likewise, the court can find no reason that this privilege would not apply in the reverse; that is, the entries in Bernath's date book should be privileged to the extent that they memorialize confidential communications he made to his attorney in furtherance of seeking legal advice. Based on these principles, the court will sustain the Department of Defense's claims of attorney-client privilege over the pages of Bernath's date book.

The court finds that the production of these date book pages would require either (a) the Department to reveal confidential communications made by Bernath to his attorney, which are clearly covered, or (b) the Department to reveal communications made to Bernath from his attorney, which themselves incorporate confidences communicated from Bernath to his attorney. The attorney-client privilege must protect "a client's disclosures to an attorney," and "the federal courts extend the privilege also to an attorney's ... communications to a client, to ensure against inadvertent disclosure, either directly or by implication, of information which the client has previously confided to the attorney's trust." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir. 1980). Production of these date book pages would reveal exactly this type of information. Therefore, plaintiffs' motion to compel the Department of Defense to produce the withheld portions of Bernath's date book will be denied.

 Second, the court holds that the passage for which the Department of Defense claims attorney-client privilege in Graybeal's date book must be produced because the Department has failed to make the showing required for the court to sustain the Department's objection. This information-in Graybeal's date book-refers to a conversation between Bernath and his agency attorney, Don Perkal. The Department tells the court that "[t]he sharing of this privileged conversation with Mr. Graybeal ... [an employee] with official interests in and responsibilities regarding this matter, in no way defeats the

privilege."[7] Department of Defense's Notice of Additional Document, at 2. While the Department accurately cites to *Coastal States Gas Corp.*, 617 F.2d 854 (D.C.Cir.1980), for the proposition that the attorney-client privilege is not "defeated by limited intra-agency circulation of legal advice," this general reference omits the heart of the matter. In *Coastal States Gas Corp.*, the court of appeals stated that the test of whether the circulation of an otherwise privileged communication to others within an agency waives the privilege "is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members who are *authorized to speak or act for the organization in relation to the subject matter of the communication.*" *Id.* at 863 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 253 n. 24 (D.C.Cir.1977)) (emphasis added). The Department does not even attempt to make such a showing in this instance; this type of information is not even alleged conclusorily. The most pertinent information that can be gleaned from the Department's filing on this score is that Graybeal is a "Military Assistant to the Assistant Secretary of Defense for Public Affairs" and that he has "official interests in and responsibilities regarding this matter." Department of Defense's Notice of Additional Document at 2. These statements do not meet the standard required under *Mead Data Central* and *Coastal States Gas Corp.* Therefore, the court will order the Department of Defense to produce this entry from Graybeal's date book.

■ Third, the court holds that the draft public affairs statement regarding the Tripp release does fall under the protections of the attorney-client privilege. This document is a confidential communication created and sent by a client (Bernath) to his attorney (Aly), who was a member of the bar and acting as an attorney. The communication relates to facts of which the client was informing the attorney for the purpose of securing an opinion of law and not for the purpose of committing a crime or tort. The Department of Defense has not waived its privilege over this document. Although the facts within this communication are not privileged, plaintiffs have already deposed Bernath at length about these matters. The document itself, however, is a confidential communication. Therefore, the Department of Defense's attorney-client privilege claim over page number 37 shall be sustained.

■ Fourth, the court holds that some of the documents prepared by the Department of Defense attorney reflecting his interpretation of the Privacy Act fall under the protections of the attorney-client privilege. The attorney-client privilege clearly extends to communications between an attorney and his representative, in this case another attorney within the Department of Defense, to the extent that communications would reveal confidential communications of the *client*. *See* WRIGHT & GRAHAM, *supra*, § 5495, at 472 ("[T]he scant federal authority on point seemingly limits the privilege for communications between joint lawyers to those that would reveal a communication from the client.") (citing *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 nn. 23 & 24 (D.C.Cir.1977)). This material does contain client confidences and, therefore, shall not be produced. Therefore, the Department of Defense need not produce pages 106–109.

Finally, the court rejects plaintiffs' bald assertion that the future crime/fraud exception applies to any of the communications involved in the attorney-client privilege claims. First, the plaintiffs bear the burden of proving such an exception once an otherwise proper claim of attorney-client privilege has been established, but the plaintiffs provide no focused argument on this point. Second, the court finds no evidence that the legal advice contained in these communications was sought in furtherance of a future crime or fraud. Therefore, the court will reject plaintiffs' claim that the crime/fraud

7. The Department of Defense also states that this information was shared with someone named "Ms. Sullivan" and asserts that this does not defeat the privilege for the same reasons as Graybeal. Unfortunately, the Department never tells the court who "Ms. Sullivan" is, and the court cannot decipher how she has any connection to the passage at issue in Graybeal's date book.

exception precludes the applicability of the attorney-client privilege in this case.

In summary, the court will order the Department of Defense to produce the entry in Graybeal's date book contained in the Notice of Additional Document filed by the Department of Defense. The court will sustain the Department's claims of attorney-client privilege in all other respects.

### (ii) *deliberative process privilege*

The Department of Defense has asserted claims of deliberative process privilege over three set of documents: those pertaining to responses to Congressional inquiries regarding the release of Tripp's background security information; those pertaining to drafts of press releases regarding the release of Tripp's background security information; and those pertaining to the recertification of Tripp's security clearance. The court has already held that documents pertaining to the Department of Defense's recertification of Tripp's security clearance are not discoverable, so the Department's claim of privilege in this regard need not be addressed. The court finds that the deliberative process privilege does not apply to a portion of the documents pertaining to the Department of Defense's responses to Congressional inquiries but the privilege does apply to all of the documents pertaining to the press releases pertaining to the documents pertaining to the press releases regarding the Tripp information release, with the exception of page number 211.

■ The deliberative process privilege is "predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fish bowl." *Dow Jones & Co. v. Department of Justice*, 917 F.2d 571, 573 (D.C.Cir.1990) (quotation omitted). The purpose of the privilege is threefold:

First, the privilege protects candid discussions within an agency. Second, it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy. Third, it protects the integrity of an agency's decision; the public should not judge officials based on information they considered prior to issuing their final decisions.

*Judicial Watch v. Clinton*, 880 F.Supp. 1, 12 (D.D.C.1995), *aff'd*, 76 F.3d 1232 (D.C.Cir. 1996).

■ To prove the applicability of the deliberative process privilege, an agency must show that the information sought is predecisional and deliberative. *Access Reports v. Department of Justice*, 926 F.2d 1192, 1194 (D.C.Cir.1991). Plaintiffs do not dispute that the documents they seek to compel inquire into matters that meet both of these criteria. Upon an independent review of these documents by the court, the court agrees that these documents appear to be predecisional and deliberative. Therefore, the Department of Defense has met its prima facie showing.

Plaintiffs rely upon the "government misconduct" exception to rebut plaintiffs' prima facie showing of the applicability of the deliberative process privilege. The Department of Defense interprets the case law differently than the plaintiffs do. In its view, government misconduct is just one factor to be considered in the balancing test that is usually undertaken to determine whether the plaintiffs' need for the information outweighs the government's and public's interests in nondisclosure.

■ These same legal arguments have been raised by both sides in connection with plaintiffs' Motion to Compel Further Testimony and Document Production from Kenneth Bacon, and the court has addressed these same legal arguments in ruling upon that motion. As the court held in that instance, the Department of Defense's interpretation of the caselaw on the misconduct exception is incorrect:

The Department of Defense's legal argument—that a "close reading" of the caselaw shows that a balancing test must still be undertaken, even in the face of identifiable government misconduct—is incorrect. The Court of Appeals has made clear that the deliberate process privilege "disappears altogether when there is *any* reason to believe government misconduct occurred." *See In re Sealed Case*, 121 F.3d at 746 (emphasis added); *see also id.* at

738 ("[W]here there is reason to believe the [deliberative information sought] may shed light on government misconduct, 'the privilege is routinely denied.'" (quoting *Texaco Puerto Rico*, 60 F.3d at 885)). These pronouncements of the law make perfect sense because, in terms of a balancing test, the public value of protecting identifiable government misconduct is negligible. *See id.* at 738. Thus, if there is "any reason" to believe the information sought may shed light on government misconduct, public policy (as embodied by the law) demands that the misconduct not be shielded merely because it happens to be predecisional and deliberative. Therefore, the Department of Defense's argument that the court must undertake a balancing of the plaintiffs' versus the public's interest in terms of protecting alleged misconduct must be rejected. *Alexander v. FBI*, Civil No. 96–2123, Memorandum and Order at 16 (D.D.C. March 31, 1999). Moreover, the cases cited by the Department of Defense for the proposition that the court must do a balancing test even if the misconduct exception applies are specifically to the contrary. *See id.* at 17–19. Therefore, as a legal matter, the court again holds that the deliberative process privilege does not apply if there is a discrete factual basis for the belief that "the deliberative information sought may shed light on government misconduct." *In re Sealed Case*, 121 F.3d 729, 746 (D.C.Cir.1997). Whether there is such a basis, however, is an entirely separate issue and will be addressed next.

As stated above, the court has held that certain information pertaining to the release of Tripp's background security information is discoverable in this case in two ways. First, plaintiffs' inquiries are acceptable to the extent that they are reasonably calculated to lead to the discovery of a White House connection to the misuse of Tripp's government file. Second, and correspondingly, evidence bearing upon any course of action to cover up political motivations for or connections to the misuse of Tripp's government file is also discoverable. Because these are the two relevant lines of discovery implicated by the pending motion, documents pertaining to these lines of inquiry may be compelled over the Department of Defense's claim of deliberative process privilege, but only if the misconduct exception applies.

■ The Department of Defense first seeks to withhold drafts of responses to Congressional inquiries regarding the release of Tripp's background security information. The court has already held under similar circumstances that documents pertaining to an attempt to cover up political motivations for or connections to the misuse of Tripp's government file fall under the misconduct exception to the deliberative process privilege. *See Alexander v. FBI*, Civil No. 96–2123, Memorandum and Order at 16 (D.D.C. March 31, 1999). Documents 1–85 reveal similar information.

Congressman John Mica asked the Department of Defense to "detail how Mr. Bernath obtained access to the Tripp file." As a subset of that question, Congressman Mica instructed the Department to "identify the person or persons who initiated the request for information." As another subset of that question, Congressman Mica told the Department to "describe each request by any party or entity since January 1, 1993 concerning the background file of Ms. Tripp, and identify the party making such request and the party who handled such request." All of these questions fall under Question 1 of Congressman Mica's interrogatories.[8]

In responding to Congressman Mica's first question (and its various subparts), Bacon's name was never mentioned. Yet, Bacon candidly admits that he was the person responsible for initiating the request when he instructed Bernath to determine whether Tripp had stated on her security application that she had a prior arrest. Although this

8. None of the other documents pertaining to responses to any of Congressman Mica's other questions implicate the misconduct exception to the deliberative process privilege. Because the plaintiffs do not contest these non-Question 1 documents' predecisional and deliberative nature, and since the court finds that the Department has met their burden of proving their prima facie privilege claims as to those documents, they are therefore privileged and need not be produced.

type of evidence does not by any means *prove* a political cover-up of potential political motivations behind or connections to the Tripp release, it does provide *some evidence* in that regard. Such behavior, if substantiated, would clearly be a case of government misconduct, and it may prove to be circumstantial evidence in plaintiffs' cause of action. Therefore, because some identifiable basis for relevant government misconduct has been shown, the documents responsive to Congressman Mica's Question 1 must be compelled over the Department of Defense's claim of deliberative process privilege.[9]

Moreover, certain drafts of a letter from the Department of Defense to Congressman B.H. Solomon (pages 86–192) and corresponding "cover sheets/executive summaries" reveal that the Department may have acknowledged the impropriety of creating the impression that the release had taken place at the behest of a career government employee rather than an a political appointee. Early drafts of these documents responding to Congressman Solomon's inquiry regarding the Tripp release clearly attempt to tie the proposition that "no request for access to Ms. Tripp's official files was made by the Executive Office of the President or Department [of Defense]" to the qualifier "other than a senior career employee of the department who, on a need to know basis, requested and reviewed Ms. Tripp's security file on March 13, 1998." This type of disingenuous matter completely omits the role of the political appointee who apparently initiated the entire process at the Department of Defense, and it provides some fodder for plaintiffs' theory regarding a political cover-up. Moreover, it attempts to focus attention on a career government employee as support for the proposition that there was no involvement on behalf of the Executive Office of the President.

The passage tying Bernath's career government employee status to the proposition that there was no Executive Office of the President involvement appears to have been later deleted from the letter and executive summary, with no apparent explanation given in the documents submitted to the court. Although the court cannot be sure which versions were the final ones because the court does not have the final letter or cover sheet, it makes no difference in the final determination as to the misconduct exception. The law in this circuit clearly states that the deliberative process privilege "disappears altogether when there is *any* reason to believe government misconduct occurred," *In re Sealed Case*, 121 F.3d at 746 (emphasis added), and that "where there is reason to believe the [deliberative information sought] may shed light on government misconduct, 'the privilege is routinely denied.'" *See id.* at 738. The court has already described the apparent pattern of misbehavior in the public statements made by Secretary Cohen, Colonel Bridges, and in the statements made to Congressman Mica as to responsibility for the Trip information release. The inclusion of this same type of misinformation in previous (but unreleased) drafts of statements to Congressman Solomon certainly sheds light on government misconduct and provides a basis to believe that government misconduct occurred. These statements corroborate the pattern of public misinformation—*i.e.*, misconduct—contemplated and carried out by the Department of Defense. The deletion of these statements in the Solomon responses may also provide some evidence of an acknowledgment of impropriety as to this entire pattern of behavior. Therefore, the court will compel the Department of Defense to produce to plaintiffs the documents responsive to Congressman Solomon's inquiry. Based on the court's *in camera* review, this set of documents includes all documents between pages 86–192 that contain the sentence "[N]o request for access to Ms. Tripp's official files was made by the Executive Office of the President or Department personnel other than a senior career employee of the department who, on a need to know basis, requested and reviewed Ms. Tripp's security file on March 13, 1998." The "executive summar-

---

9. The court notes that it has been given only draft copies of the release made to Congressman Mica, as the final version itself would not be "predecisional." However, the court notes that the misconduct identified in these agency documents—the complete omission of any mention of the apparent initiator of the Tripp information release despite questions calling for this type of information—exists in the final draft form before the court.

ies/cover pages" within this page span paraphrases this same sentence, but replaces the word "requests" for "request." For the same reasons, these documents shall be produced.

The court will not, however, compel the Department to produce pages 193–202. This information is predecisional and deliberative. There is no indication that this information would shed any light on any potential government misconduct. Therefore, plaintiffs' motion to compel these documents will be denied.

The court must at this point note that the documents pertaining to an apparent pattern of behavior by the Department of Defense to spotlight the actions of a career government employee, Bernath, but hide the role of the political appointee that initiated the entire disclosure process, Bacon, is troubling. This pattern includes drafting responses to congressional inquiries that include this deception. *See, e.g.,* Draft Response to Inquiry of Congressman Solomon (Page 128) ("[N]o request for access to Ms. Tripp's official files was made by the Executive Office of the President or Department personnel other than a senior career employee of the department. . . ."). Moreover, as explained with regard to plaintiffs' motion to compel further discovery from Bacon, there were spokespersons from the Department—including Secretary Cohen and Colonel Bridges—that publicly portrayed the scenario surrounding the Tripp release as if Bernath had initiated the process and these spokespersons then failed to correct their misinformation, despite their knowledge to the contrary. Indeed, Bacon testified that he asked Cohen to correct his statement. Bacon Depo. at 354. Cohen, however, never took this advice. All of this occurred in an apparent attempt to shift blame away from a political appointee. The issue becomes whether the inference should be drawn that the motivation for this cover-up was not only to protect this particular political appointee, but rather the Clinton Administration itself. The latter is the nexus between this entire line of inquiry as to the Tripp information release and plaintiffs' claims of government misuse of FBI files, and it is the point plaintiffs seek to prove.

The Department of Defense next seeks to withhold under the deliberative process privilege documents that consist of draft press releases and related correspondence pertaining to the misuse of Tripp's government file. Again, plaintiffs do not dispute that these documents are predecisional and deliberative, and the court finds that these documents do meet these elements. None of these documents, with the exception of page 211, fall under plaintiffs' claim of the misconduct exception. As discussed above, page 211 bears upon an implication of a career government employee in the Tripp release, omitting any mention of a political appointee's involvement. For the same reasons described above and in the opinion dealing with plaintiffs' motion to compel further testimony and documents from Bacon, the Department of Defense shall produce page 211 to plaintiffs.

### (iii) *law enforcement privilege*

The Department of Defense claims that the law enforcement privilege should prevent disclosure of the entire investigatory files of the Department of Defense's Inspector General and office of General Counsel. The Office of General Counsel began the investigation into the release of Tripp's background security information, but the Inspector General later took over the investigation. As mentioned above, these files were not originally produced *in camera* to the court. Instead, the Department of Defense provided the court with declarations from the Inspector General, Eleanor Hill, and the General Counsel, Judith Miller. Because the court was not able to make an adequate assessment of the factors required in a law enforcement privilege analysis, it ordered the Department of Defense to produce these documents forthwith. As an accommodation to the Department, however, the court agreed to go to the location where these two files are housed instead of forcing the Department to physically produce all of these documents. Unfortunately, the court's review of these documents without corresponding guidance from the Department proved to be fruitless in terms of a final decision, but it did raise some concerns. These particular-

ized concerns will be dealt with below, after a discussion of the law applicable to a claim of law enforcement privilege.

To properly invoke a claim of law enforcement privilege, the Department of Defense must meet three requirements: "(1) there must be a formal claim of privilege by the head[s] of the department[s] having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by [those] official(s); (3) the information for which the privilege is claimed must be specified, with an explanation of why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d 268, 271 (D.C.Cir.1988) (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341–42, 238 U.S.App. D.C. at 195–96 (D.C.Cir.1984); *Black v. Sheraton Corp.*, 564 F.2d 531, 542–43 (D.C.Cir. 1977)). Once this privilege is properly invoked, the court must engage in a balancing of the public's interest in nondisclosure of the information versus the plaintiffs' need for access to the investigatory files. *Id.* at 272. The proponent of the law enforcement privilege bears the burden of proving its claim. *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341–42, 238 U.S.App.D.C. at 195–96 (D.C.Cir.1984). The Court of Appeals for the District of Columbia Circuit has directed district courts to consider certain factors, as set forth in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973), when performing this balancing:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information or having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental dis-

ciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources[; and] (10) the importance of the information sought to the plaintiff's case.

*In re Sealed Case*, 856 F.2d at 272 (citing *Frankenhauser*, 59 F.R.D. at 344). Importantly, across-the-board claims of law enforcement privilege supported only by conclusory statements will not suffice. The court of appeals has recognized this insufficiency when it rejected another government agency's all-inclusive claims of law enforcement privilege over its own investigatory files:

The major error we perceive in the district court's order [upholding the law-enforcement privilege claim], however, is that the existence of a qualified law-enforcement investigatory files privilege as to all of the subpoenaed documents had not been sufficiently established by [the agency] so as to support wholesale and final rejection of [plaintiff's] motion to compel compliance.

The party claiming privilege has the burden to establish its existence.... Formally claiming a privilege should involve specifying which documents or class of documents are privileged and for what reasons, especially where the nature of requested documents does not reveal an obviously privileged matter.

*Friedman*, 738 F.2d at 1341, 238 U.S.App. D.C. at 195–96.

A governmental entity's claim of law enforcement privilege over materials that bears upon its own employees' official misconduct raises some special problems in terms of the law enforcement privilege analysis. Professors Wright and Graham have recognized this problem:

An illustration of how the investigative files privilege can become twisted by its uncertain justification and weak conceptual structure is its application to government investigations of its own employees.... [S]ome writers think the privilege should apply to investigations of government accidents because this might lead to policies to

reduce such accidents. This sounds very much like an application of the dubious "self-evaluative report" privilege to government agencies. . . . [T]hough one court has held that psychological evaluations of police officers involved in violent conflicts are within the privilege on a "self-evaluative" rationale, most courts have rejected such claims for police internal affairs investigations of officer misconduct. One court seems to have held that the investigative files privilege did not apply to an F.B.I. investigation of misconduct by one of its informants.

26A WRIGHT & GRAHAM, *supra*, § 5681, at 187 (citations omitted).

With these legal principles and concerns in mind, the court held an *ex parte, in camera* hearing with the Department of Defense on December 15, 1998, a few days after the court had reviewed the Department of Defense's investigatory files *in camera*. At that hearing, the court expressed several concerns about the Department of Defense's law enforcement privilege claim. One of the court's primary concerns about ·the Department's claim, in addition to its breadth, was that the court had no evidence before it, aside from conclusory statements in the affidavits submitted, as to the "ongoing" nature of the investigation into the Tripp release. Sealed Transcript of December 15, 1998 Hearing, at 4,; *see also In re Sealed Case*, 856 F.2d at 272 (showing that the "ongoing" nature of the law enforcement investigation pertains to factors 6 and 7 of the balancing test).

Instead of simply performing the balancing test with the evidence before the court at that time, however, the court invited the Department of Defense to submit additional sworn testimony as to the ongoing nature of the investigation. Sealed Transcript of December 15, 1998 Hearing, at 9–10. After this hearing, the court thought that it had made itself clear to the Department of Defense that the Department's broad claim of

law enforcement privilege—covering the entire investigatory files of the Department of Defense's Inspector General and office of General Counsel—would be viewed very differently if no substantive testimony was provided from the agency handling the investigation as to its ongoing nature. Unfortunately, this concern has gone unaddressed.

On December 23, 1998, the Department of Defense filed its Motion to File Supplemental Declaration of [Inspector General] Eleanor Hill *Ex Parte* and Under Seal. Compared to Hill's original affidavit, this submission was generally an improvement in terms of specificity. However, the supplemental affidavit still failed to provide any substantive testimony as to the ongoing nature of the investigation. See Hill Supp.Decl. ¶ 3. In short, the Inspector General's supplemental affidavit only supplements what she had already stated in her original declaration; it does not, however, provide any evidence of the ongoing nature of the investigation. Thus, the court has been given no assistance in that regard.

Moreover, the court still does not have the documents before it in a categorized fashion with specific assessments as to why each category is privileged, in the Department of Defense's view. "Formally claiming a privilege should involve specifying which documents or class of documents are privileged and for what reasons, especially where the nature of requested documents does not reveal an obviously privileged matter." *Friedman*, 738 F.2d at 1342, 238 U.S.App.D.C. at 196. Thus, even if the court were disposed to rule upon plaintiffs' motion to compel these documents today, it would be difficult to do so since the documents are not physically before the court and have not been Bates stamped or logged.[10]

Because these documents are not before the court in any meaningful, categorized fashion, and since the court has further specific concerns regarding the basis for the Department of Defense's wholesale claim of

**10.** The court notes that this is not entirely the Department of Defense's fault. As noted above, the court traveled to where the documents were kept, as an accommodation. Given this fact and the context of the *ex parte, in camera* hearing, the court can understand why these documents have

not been physically produced, Bates stamped, and logged. However, the court has now determined that these types of procedures will be necessary for the Department to prove its claim of law enforcement privilege. *See Friedman*, 738 F.2d 1336, 238 U.S.App.D.C. 190, 195–96.

investigatory privilege, the court believes that it must hold another *in camera, ex parte* hearing on the matter. The court simply cannot make an adequate assessment at this time of the *Frankenhauser* factors under *In re Sealed Case*, 856 F.2d at 272. This hearing will be the final opportunity for the Department to attempt to meet the elements of its law enforcement privilege claim. The court recommends that the Department arrange (or have arranged) the material within the investigatory files in a way that will allow the court to enter into a determination on each document or set of documents under the required balancing test. This will include all of the standard procedures taken with an *in camera* production of documents, including Bates stamping the pages. The court will expect the Department, consistent with the caselaw in this circuit, to specify which class of documents it claims to be privileged and, for each category of documents, why this should be the case under the factors set forth in *In re Sealed* Case. Moreover, the court expects the Department of Defense to submit sufficient additional evidence by declaration as to each element of the *Frankenhauser* factors, including the ongoing nature of the investigation. See Sealed Transcript of December 15, 1998 Hearing, at 9–10. The court will set the date and time of this hearing by further order but will allow the Department 30 days from this date to make its further written submission and tender of a set of the documents for further *in camera, ex parte* inspection.

### D. *Sanctions*

■ Plaintiffs move under Rule 37 of the Federal Rules of Civil Procedure to recover their attorneys' fees and costs associated with the Department of Defense's counsels' conduct that necessitated the filing of plaintiffs' motion to compel. As discussed above, plaintiffs' motion to compel will be granted in part and denied in part. In this situation, Rule 37(a)(4)(C) provides that "the court may . . . apportion the reasonable expenses incurred in relation to the motion [59 compel] among the parties and persons in a just manner."

Plaintiffs contend that the Department of Defense's attorneys have made improper interpretations of the language contained in plaintiffs' subpoena duces tecum (based upon *Touhy* objections) and have otherwise "failed to give [p]laintiffs the documents they clearly deserve." Plaintiffs' Motion at 32. The court disagrees. As explained in the Department of Defense's opposition, the Department originally made *Touhy* objections to plaintiffs' subpoena at a time before the court had held that *Touhy* does not apply to this case because the United States is a defendant. After the court so held, the Department of Defense represents that it researched its documents, reconsidered its privilege claims, and produced all responsive, non-privileged documents. There being no evidence to the contrary, the court believes that the Department acted properly in the assertion of their *Touhy* objections. Because the rest of their objections are also substantially justified, the court will deny plaintiffs' motion for sanctions.

### III. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that Plaintiffs' Motion [362] to Compel Further Production of Documents from the U.S. Department of Defense and for Sanctions is GRANTED IN PART AND DENIED IN PART. In this regard, it is FURTHER ORDERED that;

1. Plaintiffs' motion to compel the Department of Defense to re-search and reexamine its documents is DENIED as moot. Counsel for the Department of Defense shall file forthwith a declaration confirming that the Department of Defense has reexamined its documents in light of the court's orders of June 15, 1998, 186 F.R.D. 66 (pertaining to plaintiffs' Emergency Motion for Clarification Regarding the May 15, 1998 Deposition of Kenneth Bacon) and July 10, 1998, 186 F.R.D. 78 (pertaining to plaintiffs' Motion to Compel Further Testimony and Document Production from Clifford Bernath), as represented in the Department of Defense's opposition to plaintiffs' current motion.

2. Plaintiffs' motion to compel the Department of Defense to submit *in camera* all documents withheld under claims of privilege is DENIED as moot.

3. Plaintiffs' request to compel documents from the Department of Defense is GRANTED in that the Department shall produce:

(a) the entry in James Graybeal's date book, contained in the Department of Defense's Notice of Additional Document, previously withheld under claim of attorney-client privilege;

(b) documents within pages 1–85 of the material withheld under the deliberative process privilege that are responsive to Question 1 of Congressman Mica's inquiry as to the release of Tripp's background security information; and

(c) documents within pages 86–192 of the material withheld under the deliberative process privilege that contain the statement "[N]o request for access to Ms. Tripp's official files was made by the Executive Office of the President or Department personnel other than a senior career employee of the department who, on a need to know basis, requested and reviewed Ms. Tripp's security file on March 13, 1998." In this regard, the Department of Defense shall also produce documents that use this same statement, except that the word "requests" is substituted for "request."

4. The court will hold an *ex parte, in camera* hearing regarding the concerns raised in this opinion as to the Department of Defense's claim of law enforcement privilege. The date and time of this hearing shall be set by further order, but the court will allow the Department 30 days from this date to make its further written submission and tender of a set of the documents for further *in camera, ex parte* inspection.

5. Plaintiffs' request to compel further documents from the Department of Defense is DENIED in all other respects.

6. Plaintiffs' request for sanctions is DENIED.

7. Department of Defense's Motion [N/D] to File Supplemental Declaration of Eleanor Hill *Ex Parte* and Under Seal is GRANTED.

SO ORDERED.