Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court,
District of Columbia.

May 17, 1999.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, for FBI and Executive Office of President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for Hillary Rodham Clinton.

Stanley Brand, Ross Nabatoff, Brand Lowell & Ryan, Washington, D.C., for George Stephanopoulos.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion [629] for Order to Show Cause Why George Stephanopoulos Should Not be Held in Contempt; Stephanopoulos's Motion [633] for Protective Order and Attorney's Fees; Plaintiffs' Unopposed Motion [665] for Extension of Time to File Reply to George Stephanopoulos's Opposition; and Plaintiffs' Motion [708] to Compel Non–Party George Stephanopoulos to Provide More Complete Interrogatory Answers in the Form of Further Deposition Testimony, and to Produce Documents and Things. Upon consideration of these motions and the applicable oppositions and replies thereto, the court will GRANT IN PART and DENY IN PART Plaintiffs' Motion [629] for Order to Show Cause Why George Stephanopoulos Should Not be Held in Contempt; DENY Stephanopoulos's Motion [633] for Protective Order and Attorney's Fees; GRANT *nunc pro tunc* Plaintiffs' Unopposed Motion [665] for Extension of Time to File Reply to George Stephanopoulos's Opposition; and GRANT Plaintiffs' Motion [708] to Compel Non–Party George Stephanopoulos to Provide More Complete Interrogatory Answers in the Form of Further Deposition Testimony, and to Produce Documents and Things.

### I. *Introduction*

The allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that defendant FBI and defendant Executive Office of the President (EOP) willfully and intentionally violated plaintiffs' rights under the Privacy Act. Moreover, plaintiffs allege that Bernard Nussbaum, Craig Livingstone, and Anthony Marceca committed the common-law tort of invasion of privacy by willfully and intentionally obtaining plaintiffs' FBI files for improper political purposes.

The current motions center around the deposition testimony, document production, and interrogatory answers of George Stephanopoulos, who is not a party to this lawsuit. Stephanopoulos is the former Director of Communications for the White House and former Senior Advisor to the President for Policy and Strategy. Stephanopoulos held the latter position during the period of time that serves as the basis of plaintiffs' complaint. This was Stephanopoulos's second time to be deposed in this case. He was deposed for the first time on March 9, 1998. After his original deposition, plaintiffs filed and ultimately prevailed on a motion to compel further testimony from Stephanopoulos. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order (D.D.C. May 28, 1998). In that opinion, the court stated that Stephanopoulos's testimony led the court to conclude that Stephanopoulos failed to search for documents responsive to plaintiffs' subpoena. *Id.* at 22–23, 25 & n. 4. Accordingly, the court ordered Stephanopoulos to conduct "a reasonable search for documents responsive to plaintiffs' subpoena duces tecum previously served on him." *Id.* Order ¶ 2. Moreover, the court ordered that Stephanopoulos be re-deposed "to answer questions regarding any responsive documents produced and the adequacy of his search for responsive documents." *Id.* The court also required Stephanopoulos to answer interrogatories submitted by plaintiffs in order to afford him an opportunity to establish his attorney-client privilege claim, which had cut-off plaintiffs' line of questioning on Stephanopoulos's relevant conversations with the White House Counsel's Office. Finally, the court required Stephanopoulos to "pay plaintiffs' attorneys' fees and costs resulting from the portion of the motion necessitated by his conduct and from the need to re-depose him." *Id.*

On February 16, 1999, Stephanopoulos conducted a search for responsive documents. According to the testimony given at his most recent deposition, Stephanopoulos first searched the only business office that he maintains, at Columbia University in New York City. Stephanopoulos Depo. at 546. Within this office, Stephanopoulos searched "every place that [he] thought it was conceivably possible that there would be a document." *Id.* Stephanopoulos searched his office because, as he explained, "if [he] had any

documents, that is where they would be." *Id.* at 503. This included a folder-by-folder search of his desk, file cabinets, and shelves. *Id.* at 548.

In addition to searching his office, Stephanopoulos verified that no responsive documents were held in other places. For example, he testified that he uses his laptop computer "all the time" and that "there is nothing about FBI files" on that computer. *Id.* at 520–21. In terms of residences, Stephanopoulos testified that he has one in New York and one in Washington, D.C. The D.C. apartment is one room, and Stephanopoulos stated that he has never put any White House or other relevant documents there. *Id.* at 510–12. As for the New York apartment, Stephanopoulos testified that he is there almost daily, knows what it contains, and that it contains no responsive documents. *Id.* at 509. In terms of Stephanopoulos's ABC studio, he stated that he never keeps any documents there. However, Stephanopoulos terminated the deposition before plaintiffs' counsel asked more specific, relevant questions about the search. For example, an issue has arisen as to *notes* that pertain to the FBI files matter, made contemporaneously to the time period at issue. Stephanopoulos never stated—and terminated the deposition before he was asked—whether these contemporaneous notes were included in his definition of "documents."

## II. *Analysis*

### A. *Plaintiffs' Motion for Order to Show Cause*

Plaintiffs contend that Stephanopoulos should be held in contempt for failing to comply with the court's May 28, 1998 Order, fined a minimum of $10,000 per day until a thorough search is completed, ordered to re-appear for further questioning, and required to pay all of plaintiffs' attorneys fees and costs associated with the filing of plaintiffs'

motion and a third deposition. The court will grant in part and deny in part plaintiffs' motion. Stephanopoulos's deposition shall be continued and will include (but not be limited to) the scope of the court's May 28, 1998 Order.[1] Plaintiffs' other requested relief in this motion will be denied.

In its May 28, 1998 Order, the court set out the permissive scope of Stephanopoulos's deposition. Specifically, the court ordered Stephanopoulos to be re-deposed about any documents that he may have found and the adequacy of his new search. Despite this clear order, however, plaintiffs insisted on trying to fight previous, currently irrelevant battles, such as whether Stephanopoulos in fact conducted his first search. Inquiries about Stephanopoulos's first search are outside the scope of the court's order and seek irrelevant testimony. Accordingly, plaintiffs will refrain from pursuing this line of questioning.

Plaintiffs did, however, ask a number of questions relevant to the subject matter at hand, and Stephanopoulos appears to have been prepared to answer those questions. However, Stephanopoulos unilaterally terminated his deposition before plaintiffs could complete this relevant questioning, which had been ordered by the court. Although the court will not sanction either side in this matter, *see infra* subpart II(D), plaintiffs are still entitled to this information. For example, plaintiffs have raised valid issues as to whether Stephanopoulos took relevant, contemporaneous notes on the FBI files matter. Whether such notes were taken, whether they still exist, and whether Stephanopoulos's document search included these notes are all relevant matters that were not reached, due to Stephanopoulos's termination of the deposition. Therefore, Stephanopoulos's deposition shall be continued and testimony on this subject, consistent with the court's May 28, 1998 order, shall be allowed.[2]

---

1. Given the court's order below, however, this scope will be expanded to include Stephanopoulos's relevant conversations with the White House Counsel's Office about the FBI files matter.

2. Because Stephanopoulos's continued deposition will include testimony on notes he may have made contemporaneously to the pertinent time period, the court will deny plaintiffs' request for a court-ordered *in camera* inspection of these notes at this time. If they have a suitable basis for doing so, plaintiffs may move to compel the

### B. *Plaintiffs' Motion to Compel*

Plaintiffs' motion to compel Stephanopoulos to provide more complete interrogatory answers, in the form of further deposition testimony, and to produce documents and things, will be granted. As part of its May 28, 1998 Order, the court noted that the deposition testimony from Stephanopoulos's first deposition did not provide a sufficient basis to rule upon certain claims of attorney-client privilege asserted by Stephanopoulos as to conversations he may have had with the White House Counsel's Office regarding how Filegate was simply a harmless "mistake." Stephanopoulos testified at his first deposition that he could not remember the details of these conversations, if they ever occurred. Stephanopoulos did offer that if he did have such conversations, they would have probably been with a certain White House Counsel's Office attorney, Jane Sherburne, around the time the Filegate scandal was made public in the press. Yet, defendant EOP asserted attorney-client privilege claims over this line of questioning, which precipitated plaintiffs' earlier motion to compel and court ordering of further testimony by interrogatory on this issue, because the court could not adequately address Stephanopoulos's claims of attorney-client privilege based upon the record at the time. Plaintiffs submitted these interrogatories, and Stephanopoulos responded. Although Stephanopoulos states by response to interrogatory that he cannot remember the specifics of these conversations, defendant EOP has withdrawn their attorney-client privilege objection. Because the court, consistent with its practice throughout this case, will refuse to deny plaintiffs a meaningful opportunity to examine Stephanopoulos on this issue based on post-deposition written testimony, Stephanopoulos shall submit to a continued deposition as to his relevant conversations with the White House Counsel's Office.

### C. *Stephanopoulos's Motion for Protective Order*

Stephanopoulos seeks a protective order to shield himself from any adverse consequences derived from leaving his court-ordered deposition, as seen in the following passage:

[Q:] What are the topics of your classes [at Columbia University]?

[A:] Presidential promises.

[Q:] Presidential promises. And what [does that] mean?

[Government counsel:] Objection, relevance.

[Q:] You can respond.

[A:] I look at every Presidency from Kennedy to Clinton. I take a specific campaign promise for each president and then see what happened to it.

[Q:] One of the President's promises was that he was going to have the most honest and ethical administration[s]?

[A:] That's not the one I chose. I did welfare reform.

[Q] I understand why you didn't choose it but did you discuss it?

[Stephanopoulos's counsel:] You're wasting our time again, Larry. That has nothing to do with the adequacy of his search.

[Plaintiffs' counsel:] He said he had papers on his shelf, Presidential promises, the Clinton administration—

[Stephanopoulos's counsel:] He didn't say all that. You're jumbling things together. Stick to what he's testified to.

[A:] I can say for the record that on questions 4, 5, 6, 7—

[Q:] Mr. Stephanopoulos, I will ask the question. Certify this. This is part of our motion for sanctions. We will ask the questions.

[A:] On questions 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18 and 19 and 20 and 21 and 22 and 23 and 24 and 25 and 26 and 27 and 28 and 29 and 30 and 31 and 32 and 33 and 34 and 35 and then 38 and 37 and I did not find any documents after a thorough search responsive to those questions.

[Q:] There's no question pending, Mr. Stephanopoulos. The question was did you ever discuss in any of your classes at Columbia University the issue of allega-

*in camera* inspection of these notes after the continued deposition is finished.

tions that this President had not been honest?

[Stephanopoulos's counsel:] Objection.

[Q:] Have you ever discussed that?

[Stephanopoulos's counsel:] Objection and instruct him not to answer. You're wasting our time again, Larry.

[Q:] Certify it. You keep tapes of all your classes?

[Stephanopoulos's counsel:] Larry, this deposition is over.

[Plaintiffs' counsel:] All right, certify it. We'll move for sanctions.

Stephanopoulos Depo. at 549–552. Stephanopoulos also asks this court to enter an order shielding him from further discovery in this case.

■ Of course, absent good cause, deponents are not free to leave a court-ordered deposition with impunity. A review of the entire transcript (as exemplified by this passage), however, reveals that Stephanopoulos was justified in terminating the deposition. Although plaintiffs did, to some extent, elicit relevant testimony in other points of the deposition as to Stephanopoulos's February 16, 1999 document search, much of the deposition was spent exploring other irrelevant matters. For example, what Stephanopoulos teaches in his class is simply not calculated to lead to the discovery of admissible evidence in this privacy law case against the government. *See* FED.R.CIV.P. 26(b). Neither are the circumstances of Stephanopoulos's first document "search," as plaintiffs spent much of their deposition inquiring about. These types of inquiries simply waste time and do not advance the search for relevant facts in this litigation. Therefore, based upon the testimony given at Stephanopoulos's deposition, the court finds good cause for Stephanopoulos to have terminated his deposition. Given the court's order of Stephanopoulos's further deposition testimony in two regards, however, the court will deny his request for a termination of discovery as to him.

### D. Sanctions

■ The court must once again turn to counter-motions for sanctions. Plaintiffs ask for sanctions in conjunction with their motion for order to show cause and their motion to compel. Because the court finds that Stephanopoulos was justified in terminating his deposition, and given defendant EOP's proper withdrawal of the attorney-client privilege claims given Stephanopoulos's lack of memory, plaintiffs' requests for sanctions will be denied.

■ Stephanopoulos's motion for sanctions will also be denied. Stephanopoulos seeks to recover the attorney's fees he incurred in relation to the filing of his motion for protective order. Although the court agrees that Stephanopoulos justifiably terminated his deposition, the court is also cognizant of how this deposition came about. It is Stephanopoulos's own conduct at his first deposition that required him to be deposed again and subjected to further scrutiny. Plaintiffs' counsel did, in fact, elicit relevant testimony. Stephanopoulos was subject to less than one and one-half hours of questioning before unilaterally terminating this court-ordered deposition. Although he was justified in so doing, he is not entitled to attorney's fees for such a unilateral termination. Therefore, his motion for attorney's fees will be denied.

### III. Conclusion

For the reasons stated above, the court HEREBY ORDERS that:

1. Plaintiffs' Motion [629] for Order to Show Cause Why George Stephanopoulos Should Not be Held in Contempt is GRANTED IN PART and DENIED IN PART. Specifically, it is FURTHER ORDERED that:

a. Stephanopoulos's deposition shall be continued, and shall include (along with paragraph 4 of this order) examination on the subject matter described in the court's order of May 28, 1998. This scope shall include issues pertaining to notes contemporaneously made by Stephanopoulos during the relevant period of time.

b. Plaintiffs' other requests are DENIED.

2. Stephanopoulos's Motion [633] for Protective Order and Attorney's Fees is DENIED.

3. Plaintiffs' Unopposed Motion [665] for Extension of Time to File Reply to George Stephanopoulos's Opposition is GRANTED *nunc pro tunc.*

4. Plaintiffs' Motion [708] to Compel Non–Party George Stephanopoulos to Provide More Complete Interrogatory Answers in the Form of Further Deposition Testimony, and to Produce Documents and Things is GRANTED. In addition to the subjected matter described in the court's May 28, 1998 Order, Stephanopoulos shall have his continued deposition taken on conversations with the White House Counsel's Office pertaining to the FBI files matter.

5. Plaintiffs may not exceed the scope of subject matter provided for in the court's May 28, 1998 Order and paragraph 4 of the court's order today.

SO ORDERED.