**Cara Leslie ALEXANDER, et al., Plaintiffs,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**Civ. Nos. 96–2123, 97–1288.**

United States District Court, District of Columbia.

Jan. 24, 2000.

Larry Klayman, Judicial Watch, Inc., Washington, D.C., for plaintiffs.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Anne Weismann, James J. Gilligan, Elizabeth Shapiro, U.S. Department of Justice, Washington, D.C., David E. Kendall, Marcie Ziegler, Williams & Connolly, Washington, D.C., Stanley Brand, Ross S. Nabatoff, Pamela Marple, Brand, Lowell & Ryan, Washington, D.C., for defendant.

---

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion to Compel Further Deposition Testimony of George Stephanopoulos and for Other Appropriate Relief and Plaintiffs' Motion for an Extension of Time to File Reply to George Stephanopoulos' Opposition to Plaintiffs' Motion to Compel. Upon consideration of this motion, its corresponding opposition and the reply thereto, and the relevant law, the court will GRANT plaintiffs' Motion for an Extension of Time and DENY plaintiffs' Motion to Compel Further Deposition Testimony.

### I. *Introduction*

The allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that defendant FBI and defendant Executive Office of the President (EOP) willfully and intentionally violated plaintiffs' rights under the Privacy Act. Moreover, plaintiffs allege that Bernard Nussbaum, Craig Livingstone, and Anthony Marceca committed the common-law tort of invasion of privacy by willfully and intentionally obtaining plaintiffs' FBI files for improper political purposes.

The current motions center around the deposition testimony, of George Stephanopoulos, who is not a party to this lawsuit. Stephanopoulos is the former Director of Communications for the White House and former Senior Advisor to the President for Policy and Strategy. Stephanopoulos held the latter position during the period of time that serves as the basis of plaintiffs' complaint.

This was Stephanopoulos' third time to be deposed in this case. He was deposed for the first time on March 9, 1998. After his original deposition, plaintiffs filed and ultimately prevailed on a motion to compel further testimony from Stephanopoulos. *See Alexander v. FBI,* 186 F.R.D. 21, at 37-38 (D.D.C. 1998). In that opinion, the court stated that Stephanopoulos' testimony led the court to conclude that Stephanopoulos failed to search for documents responsive to plaintiffs' subpoena. *Id.* at 22–23, 38 & n. 4. Accordingly, the court ordered Stephanopoulos to conduct a reasonable search and to be re-deposed "to answer questions regarding any responsive documents produced and the adequacy of his search for responsive documents." *Id.* Order ¶ 2.

Stephanopoulos was then re-deposed for the second time. At that deposition, he answered several of the plaintiffs' questions regarding his February 16, 1999 search for responsive documents. However, Stephanopoulos terminated the deposition before plaintiffs' counsel were able to complete their questioning about the search. Therefore, plaintiffs once again filed and prevailed on a motion to compel further deposition testimony from George Stephanopoulos. *See Alexander v. FBI,* 186 F.R.D. 208 (D.D.C.1999). In that opinion, the court held that Stephanopoulos was justified in terminating his deposition given "plaintiffs' insist[ence] on trying to fight previous, currently irrelevant battles." *Id.* at 211. However, the court further held that plaintiffs were still entitled to the opportunity to ask more specific, relevant questions about the search, such as "[w]hether notes on the FBI files matter were taken, whether they still exist, and whether Stephanopoulos' document search included these notes." *Id.* at 211.

Therefore, pursuant to the court's May 17, 1999 Order, Stephanopoulos was deposed for a third time on June 12, 1999. Plaintiffs now file yet another motion to re-depose Stephanopoulos in order to compel answers to certain questions, which they argue Stephanopoulos refused to answer at his third deposition. Plaintiffs further seek to compel the *in camera* review of tapes and transcripts of conversations Stephanopoulos had with Eric Alterman, which were used by Stephanopoulos when writing his book *All Too Human.*

### II. *Analysis*

#### A. *Further Deposition Testimony*

■ After already deposing Non-party Stephanopoulos three times, plaintiffs now seek to compel even further deposition testimony. They base their motion on the fact that "on a number of occasions, at Mr. Stephanopoulos' beckoning, his counsel instructed him not to answer questions." Plaintiffs'

Motion to Compel at 2. A review of the deposition transcript, however, shows that these questions pertained to both irrelevant and previously covered matters. For example, plaintiffs claim that their questions regarding where Stephanopoulos searched for responsive documents and whether he took any desk diaries when he left the White House went unanswered. However, these questions were in fact answered and significant testimony regarding these issues was given in Stephanopoulos' prior depositions. This court will not compel further testimony to allow plaintiffs to continue to rehash old topics of discovery that have already been extensively covered.

Furthermore, plaintiffs have again failed to obey this court's prior orders requiring the proponent of a motion to compel discovery to first establish the relevance of the material sought. *See Alexander v. FBI*, 186 F.R.D. 21, at 51 (D.D.C.1998); *Alexander v. FBI*, 186 F.R.D. 154 (D.D.C.1999). Once again, rather than explain the relevance of the questions they claim were unanswered, "plaintiffs merely attach the deposition transcript as an exhibit to the motion, highlight the questions to which they seek to compel answers," and give some background facts regarding the deposition. *Alexander v. FBI*, 186 F.R.D. 185 (D.D.C.1999). Moreover, the questions plaintiffs have marked, particularly those few questions that have not been extensively covered in prior depositions such as whether Stephanopoulos paid Eric Alterman to have transcripts of their conversations made, are simply irrelevant and unrelated to the matter for which the re-deposition was granted-Stephanopoulos' February 16, 1999 search for responsive documents.

■ Plaintiffs also contend that they should be allowed to re-depose Stephanopoulos because, they allege, "it is clear that [he] ... has not answered truthfully to this Court." Plaintiffs' Reply at 7. Plaintiffs are simply not entitled to re-depose Stephanopoulos based on the fact that his answers were not what they wanted or what they believe is truthful.

### B. *Eric Alterman Tapes*

Plaintiffs further request that the tapes and transcripts of conversations between Eric Alterman and Stephanopoulos, which were used in the writing of Stephanopoulos' book, be produced *in camera* for the court to review. However, this court has already ruled that the plaintiffs have failed to demonstrate the relevance of these materials. *See Alexander v. FBI*, 186 F.R.D. 21, at 48-49 (D.D.C.1999). Stephanopoulos has testified (repeatedly) that "he possessed no notes for his books pertaining to the Filegate matter," and plaintiffs have been unable to produce any evidence to the contrary. *Id.* Therefore, plaintiffs' motion must be denied.

### III. *Conclusion*

For the foregoing reasons, the court HEREBY ORDERS that the plaintiffs' Motion to Compel Further Deposition Testimony of George Stephanopoulos and for Other Appropriate Relief is DENIED. Plaintiffs' Motion for an Extension of Time to File Reply is GRANTED, and plaintiffs' reply has been fully considered.

SO ORDERED.